# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 2:17-cr-00726-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| DAVID GRANT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on a motion to suppress filed by defendant David Grant ("Grant"). For the reasons set forth below, the court denies the motion.

## I. BACKGROUND

Grant is charged with selling heroin from a residence at 2045 Delaware Avenue in North Charleston. On April 26, 2017, the North Charleston narcotics unit worked with a confidential informant to orchestrate a drug deal between Grant and the CI. The drug deal was captured on video and audio recording. ECF No. 52, Ex. 1 Incident report. The North Charleston Narcotics Unit then obtained an arrest warrant for Grant based on that information. On May 5, 2017, officers conducted surveillance on what they believed to be Grant's house at 2681 Houston Street. While conducting surveillance, the officers observed Grant leave his house and proceeded to initiate a traffic stop. During the traffic stop, officers provided Grant with <u>Miranda</u> warnings and arrested him on his outstanding arrest warrant. Officers also questioned Grant about where he had hidden drugs, and he told the officers that he had drugs in the nightstand of his house at Houston Street. A search warrant was obtained on May 5, 2017 to search 2681 Houston Street. However, the search warrant has competing addresses—the face of the search warrant is for 2681 Houston Street but the "probable cause" section of the warrant states that probable cause

1

for issuing the search warrant stemmed from information that the North Charleston Narcotics Unit received from the confidential informant that drugs were being packaged, distributed, and used at 3438 Navajo Street. Officers recovered sixty bags of heroin and various drug paraphernalia from the search at 2681 Houston Street.

On August 8, 2017, Grant was indicted with two counts of possession with intent to distribute heroin, one count of felon in possession of a firearm, and one count of use of a firearm in furtherance of a drug trafficking crime. On January 20, 2018, Grant filed this motion to suppress. The government responded on May 10, 2018. On May 22, 2018, the court held a hearing on this motion during which the parties produced testimony from the involved law enforcement officers and exhibits. The motion has been fully briefed and is now ripe for the court's review.

## II. DISCUSSION

Grant makes two arguments that the evidence found at his home at 2681 Houston Street should be suppressed. First, that the search warrant was invalid because it was not based on probable cause to search the premises identified in the warrant. Second, that he did not receive any <u>Miranda</u> warnings before making statements to officers during the traffic stop. The court addresses and rejects each argument.

### A. Search Warrant

Grant first argues that the evidence should be suppressed because the search warrant was invalid, as it was not based on probable cause to search the premises identified in the warrant.

The search warrant stated that the location to be searched was "2681 Houston Street North Charleston, SC 29405," and issued May 5, 2017. The cover sheet of the

search warrant issued was also to 2681 Houston Street. Furthermore, the "description of premises to be searched" also stated that the location to be searched was 2681 Houston Street, North Charleston, SC 29405, and describes the location as "a single story, single family home; with light tan in color siding and a light brown shutters and trim. If one is looking at the front of the residence the driveway is on the right side of the residence and to the left is the front porch which is where the front door of the residence is located." However, the body of the search warrant under the section entitled "reason for affiant's belief that the property sought is on the subject premises" states:

> "Since the affidavit is being submitted for the limited purpose of securing authorization to search the evidence at 3438 Navajo Street in North Charleston, SC 29405."

This page contains the signature of the judge at the bottom of the page, and each page of the search warrant was initialed by the judge. And importantly, it sets out the probable cause determination. Specifically, it states that the North Charleston Narcotics Unit received information about illegal drugs being packaged, distributed, and used from "the above location" by Grant. The probable cause section of the search warrant further states that detectives conducted surveillance "at the location which is the target's residence" and after observing Grant leave his residence and drive off, the officers conducted a traffic stop and eventually took him into custody. It was during this traffic stop that Grant stated that there was a quantity of heroin in his bedroom under the nightstand.

During the hearing on this motion, the government presented testimony from James Ford ("Ford"), a detective with the Narcotics unit of the North Charleston Police Department. Ford became involved in this investigation in response to a citizen complaint about Grant selling narcotics in the neighborhood of Union Heights in North

Charleston. In response to the complaint, Ford decided to use a confidential informant ("CI") who knew Grant. In April 2017, the CI was brought into the North Charleston Police Department and wired with audio and video recording. Ford then initiated a controlled purchase between Grant and the CI. Grant gave the CI 0.5 grams of heroin, and the purchase was recorded on audio and video. With this information, Ford drafted an arrest warrant for Grant. Ford testified that he located Grant's address with a search on the public Department of Motor Vehicle database, and that the address was 2681 Houston Street. The CI confirmed that the Houston Street address was Grant's residence, and upon visual observation Ford confirmed that it was the vehicle that was registered to Grant in the DMV database that was parked at the Houston Street address.

For safety reasons, Ford decided to serve the arrest warrant on Grant by initiating a traffic stop. North Charleston Police Department officer Catherine Kirkland ("Kirkland") and Ford conducted surveillance on the Houston Street address and observed Grant leave his residence in the automobile registered to him on the DMV website, at which point Kirkland initiated a traffic stop to serve the arrest warrant. After Grant was handcuffed, Ford approached Grant to give him a verbal <u>Miranda</u> warning and question him. Ford asked Grant if he had any contraband, to which Grant responded "yeah I had been selling a little bit" and that he had sixty bags of heroin "at my house" in his nightstand. Ford understood Grant's location of "at my house" as the 2681 Houston Street address, which was the address listed as Grant's residence on the DMV database, the address that the CI confirmed was Grant's address, and the address that Ford and Kirkland observed Grant leave from on the morning of his arrest. Based on this information, Ford believed that he had probable cause to conduct a search of Grant's

residence at 2681 Houston Street. Ford testified that another detective with the North Charleston Police Department typed up the search warrant using the information that Ford verbally provided him. The search warrant includes the erroneous Navajo Street address in the "reason for affiant's belief" section, but in what can be fairly described as the boilerplate section of the search warrant setting forth the address of the residence to be searched:

> Since the affidavit is being submitted for the limited purpose of securing authorization to search the evidence at 3438 Navajo Street in North Charleston, SC 29405

ECF No. 39, Ex. 2, Search Warrant. None of the numbered statements under this boilerplate statement setting forth the address to be searched have the Navajo Street address. These numbered statements state, in relevant part:

1. During the month of April 2017, the North Charleston Narcotics Unit received information in reference to illegal drugs being packaged, distributed, and used from the above location by the target, David Grant Jr.
2. In reference to the above information, the target pursuant to a controlled purchase was wanted for Distribution of Heroin. Detectives conducted surveillance at the location which is the Targets residence. While conducting Surveillance the target left his residence and drove off where a traffic stop was conducted and he was taken into custody for his active Distribution of Heroin Warrants. While speaking with the target, he made a post Miranda Statement regarding a quantity of heroin at his residence. I then asked the suspect where it was located and he stated it was in his bedroom under the nightstand.

ECF No. 39, Ex. 2, Search Warrant. Ford testified that search warrants are typed up using existing search warrants as a template. It appears that the Navajo Street address was in a previous search warrant and it was a mere clerical error by the transcribing detective that it was included in the search warrant. It is the Houston Street address that appears on the face of the search warrant and in the conclusion of the search warrant.

The numbered statements in the "reason for affiant's belief" section of the warrant do not include an address, but repeatedly refer to Grant's "residence." And indeed, upon executing the search warrant at the Houston Street address Ford recovered a plastic baggie with forty-six bags of heroin from underneath a nightstand in Grant's bedroom. The location of the heroin was consistent with where Grant told Ford the heroin was during the traffic stop. During the search of the Houston Street address, Ford also recovered a "for sale" sign with Grant's phone number on it, which Ford knew was Grant's phone number because he had it from the CI who was familiar with Grant before the controlled purchase.

The government contends that the inclusion of the Navajo Street address in the probable cause section of the search warrant is a clerical error, even though the only address in the probable cause section of the search warrant is the Navajo Street address. Grant rebuts that these discrepancies in the affidavit show the issuing judicial officer served as a mere rubber stamp for the police officers, thereby abandoning his neutral and detached role as a judicial officer. Certainly, the "neutral and detached" function is not performed when the judge merely rubber stamps a law enforcement officer's application. Aguilar v. Texas, 378 U.S. 108, 111, 114–15 (1964). A search warrant issued by a magistrate judge who lacks such neutrality and detachment "stands on no firmer ground than if there had been no warrant at all." Coolidge v. New Hampshire, 403 U.S. 443, 453. Under United States v. Leon, 468 U.S. 897, 915 (1984), reviewing courts may not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause."

In <u>United States v. Jones</u>, 707 F. App'x 317, 319 (6th Cir. 2017), <u>cert. denied</u>, 138 S. Ct. 935 (2018), the defendant made a similar argument that the mistaken address on the search warrant invalidated the warrant and the subsequent search.  The Sixth Circuit rejected the argument where the search warrant provided "ample detail" to identify the house to be searched and photographs of the residence were attached to the affidavit.  <u>Id.</u> at 320.  This allowed the executing officers to "easily identify" the target residence "in spite of" the search warrant including an incorrect address.  <u>Id.</u>  But in <u>Jones</u>, the address on the affidavit did not exist in the town.  <u>Id.</u>  Furthermore, the residences near the target house were easily distinguishable because the executing officers could use the photographs attached to the search warrant to determine the correct house.  <u>Id.</u>  Here the search warrant contained no attached photographs, and the Navajo Street address that was in the probable cause section of the affidavit is as much a residence in North Charleston as the Houston Street address that was on the face of the search warrant and the house ultimately searched.  But minor inaccuracies will not necessarily invalidate a search warrant.  <u>United States v. Pelayo-Landero</u>, 285 F.3d 491, 496 (6th Cir. 2002).  Courts "routinely uphold" warrants with partial inaccuracies, so long as the description contains enough accurate information "to identify the place to be searched with particularity."  <u>Id.</u> at 497.  So even an incorrect address is not fatal if the rest of the description leads the officers in the right direction.  And here, where the face of the search warrant had the correct Houston Street address as well as a detailed description of the house to be searched, this qualitative description would lead the officers to search the correct house.

Furthermore, to the extent that the inclusion of the Navajo Street address in the probable cause section of the search warrant was as the result of a clerical error, "honest

7

errors by the affiant are not grounds for suppression." United States v. Sanchez, 725 F.3d 1243, 1247 (10th Cir. 2013). The court certainly questions how a clerical error could have occurred twice in the probable cause section of the search warrant, which is the only substantive section of the search warrant. But unless the officers made "a false statement knowingly and intentionally, or with reckless disregard for the truth" in the warrant affidavit and "the allegedly false statement is necessary to the finding of probable cause," there has been no Fourth Amendment violation. Franks v. Delaware, 438 U.S. 154, 155–56 (1978). After all, the exclusionary rule "is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, 468 U.S. at 916.

Certainly, as the Tenth Circuit has reasoned "[s]loppiness in writing, and approving, affidavits for warrants is an unfortunate, and sometimes costly, error." United States v. Perry, 181 F. App'x 750, 753 (10th Cir. 2006). But the inclusion of the Navajo Street address in the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (internal quotation marks omitted). Therefore, Grant's motion to suppress is denied under Leon.

### B. Miranda issue

Next, Grant contends that even if the search warrant was valid, the evidence from the search should be suppressed because he was not properly advised of his Miranda rights prior to making the statement that heroin could be found in the nightstand of his bedroom. Further, Grant argues that, in the event the court finds that he was advised of his Miranda rights, he did not make a knowing, intelligent, and voluntary waiver of his Miranda rights before making statements to police. The court is not convinced.

It is the government's burden to prove, by a preponderance of the evidence, that a defendant was properly advised of his Miranda rights; that the defendant voluntarily, knowingly, and intelligently waived said rights; and that the ensuing statement was voluntarily made. United States v. Durham, 741 F.Supp. 498, 504 (D.Del. 1990) (citing Colorado v. Connelly, 479 U.S. 157, 169 (1986)). Two factors must be considered to determine whether a waiver was voluntary, knowing and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Moran v. Burbine, 475 U.S. 412, 421 (1986). The totality of the circumstances surrounding the questioning must be examined to determine the sufficiency of Miranda warnings and any waiver of rights. See North Carolina v. Butler, 441 U.S. 369, (1979). A valid Miranda waiver may be made orally or may be implied based on the defendant's conduct. See Id. at 373. Specifically, the Supreme Court has stated that while "an express written or oral statement of a waiver, is strong proof as to the validity of a waiver, it is not necessary or sufficient to establish a waiver." Id. Verbal statements by a suspect acknowledging an understanding of his Miranda rights followed by answering questions can qualify as an implicit waiver of Miranda protections.

Here, there is no body camera video and no written Miranda waiver. Ford testified that the narcotics unit of the North Charleston Police Department was not issued body cameras or in-car cameras for safety reasons.[1] Furthermore, Kirkland testified that

---

[1] Ford testified that there is in-car video of Grant being transported to the detention center after his arrest, but that this video had not been provided because no

she arrested Grant after initiating a traffic stop but could offer no information on whether Ford issued the verbal Miranda warning to Grant because within 1–2 minutes of arresting Grant Ford arrived on the scene and she left.

Ultimately, Ford testified that he verbally gave the Miranda warning and that Grant's demeanor after his verbal waiver of his Miranda rights was very calm and that Grant displayed no hostility. Grant argues in his motion that no Miranda warning was given but during the hearing on this motion Grant neither made any argument on the Miranda issue nor testified as to what happened during the traffic stop. Indeed, by all appearances it seems to this court that Grant abandoned his Miranda argument. It is a battle of credibility between a testifying officer who testified under oath that he gave verbal Miranda warnings and a non-testifying defendant who made no argument during the hearing on the Miranda issue. This court has no reason to doubt that Grant was properly administered Miranda warnings, and there is also no testimony or evidence before the court to support a finding that Grant made anything but a voluntary, knowing, and intelligent waiver of his Miranda rights.

---

statements were given during the transport process. Instead, the video of the transport process is only downloaded if a suspect had stashed narcotics or was combative.

## IV. CONCLUSION

For the reasons set forth above, the court **DENIES** Grant's motion to suppress.

**AND IT IS SO ORDERED**.

                                        **DAVID C. NORTON**
                                        **UNITED STATES DISTRICT JUDGE**

**June 6, 2018**
**Charleston, South Carolina**